**MINTER et al. v. SPARKS et al.**

**No. 14404.**

Court of Civil Appeals of Texas. Dallas.

Nov. 23, 1951.

Rehearing Denied March 14, 1952.

O'Connor & Douglass, Dallas, for appellants.

Burt Barr and Earl R. Parker, Dallas, and John E. Thomason, Fort Worth, for appellees.

YOUNG, Justice.

Appellant Minter and another brought suit against W. G. Sparks alleging conversion of personal property (a large quantity of airplane parts), date of taking as of September 18, 1946; later by amended petition making Winn McReynolds a party, claiming similar cause of action against him in that said McReynolds had taken title to and obtained possession of the property by transfer from Sparks on or about June 10, 1948; praying for damages in actual value thereof against both defendants ($28,-125), also for $10,000 exemplary damages against Sparks alone. On hearing of plea in bar interposed by defendant McReynolds, same was sustained, resulting in his dismissal from the suit; and on further trial and jury verdict as to Sparks, appellants were dissatisfied with the final judgment rendered thereon, with effect of this appeal.

Jury issues and answers were in substance that on or about September 18, 1946, B. A. Minter and W. L. Cook were owners of certain airplane parts stored at 7307 Denton Drive, Dallas; that the reasonable cash market value of same on said date in Dallas County was $1,600; that on September 18, 1946, B. A. Minter had made demand on W. G. Sparks who refused to deliver same; that Sparks did tender the airplane equipment in suit to Minter on October 3, 1946, at which time the reasonable cash market value of the property was $1,600. Each party filed motion for judgment on the verdict, the court finding in effect that plaintiffs should have title and possession of the property in suit, and denying their right to a money judgment. There was a further decree that defendant should recover of plaintiffs the sum of $310 (cross-action for storage charges), which amount was later the subject of remittitur, rendering moot the points of appellants relative thereto.

The incidents giving rise to the controversy along with other material facts must first be stated, gleaned either from undisputed testimony or as related by the parties. Minter and Cook had bought these airplane parts (175 R–985 Pratt and Whitney cylinders and 275 Pratt and Whitney harness assemblies) from the U. S. Government—Naval Air Base, Dallas—in 1945, paying $1,500, but valued for purpose of suit in excess of $28,000. In 1946 the daughter of B. A. Minter and Glenn Sparks (son of defendant) were husband and wife, living at 7307 Denton Drive on premises rented from the father, W. G. Sparks. In the summer of

that year, Minter arranged with Glenn Sparks and wife for storage of the described property in a garage at rear of said home on a $7.50 per month basis. Later and about the middle of September, the young couple separated and moved out, Glenn turning over house keys to his father who put a lock on the garage as protection to some other property located therein. A few days afterwards, Minter, desiring to secure the equipment, went to said garage and, discovering same to be locked, requested entry of Sparks, father and son. Here the testimony conflicts,—plaintiff Minter saying that in a phone conversation he was refused delivery until a debt owed by Mrs. Minter was paid; Sparks denying that he made a repossession of the equipment subject to any condition; that he had not objected to the removal of this property by Minter, telling the latter that he wouldn't be at home that particular evening but would leave the key "with my wife so there would be sure to be someone there to go down there with him and unlock and let him have those parts when he got ready."

Further history of the equipment is reflected in letters to Minter signed by W. G. Sparks, October 3, 1946, viz.: "This is your notice to vacate my garage at 7307 Denton Drive on or before Noon Saturday, October 5th, as I have rented the house and garage to a tenant who will use the garage, or the parts will be sold for storage charges." And April 24, 1947, viz.: "Please be advised that the automotive parts owned by you, which are held by me in litigation, have been removed from 7307 Denton Drive to 110 Bombay Street, Dallas. Be advised further that the expense incurred in moving these parts and the ensuing storage will be your liability." According to Sparks, he paid some $70 hauling charge for removal of the property to the Bombay Street address, with space there rented at $10 per month; in 1949 turning it over to a Mr. McReynolds who had the same stored in warehouse of a Mr. Constance near Love Field. In this connection appellants contend that at least some of the parts had been disposed of, under testimony of Sparks that, "After I had informed Mr. Minter that

those things—that Mr. McReynolds was going to take them over to his place, and nothing happened to them, and this man had them over there, through instructions of my attorney I told him to get shut of them, if he could get ten dollars for them, all right, and if not, to give them to somebody." However we are cited to no specific testimony of any completed sales.

■ Appellants' basis of recovery for conversion follows the jury finding of a demand and refusal to deliver these airplane parts on or about September 18, 1946; the undisputed testimony being, however, that defendant Sparks made an unconditional tender thereof on October 3; and no factual basis for claim of conversion would appear to exist under the settled definition of the term applicable here, that a " 'Conversion' is the unlawful and wrongful exercise of dominion, ownership, or control by one person over property of another to exclusion of exercise of the same rights by owner, *either permanently* or for an indefinite time, * * *." (Emphasis ours.) Ashbrook v. Hammer, Tex.Civ.App., 106 S.W.2d 776, syl. 1; Boyd v. Martin, Tex. Civ.App., 119 S.W.2d 1110; Bradley v. McKinzie, Tex.Civ.App., 226 S.W.2d 458.

Even from appellants' version of the controversy, there was no claim of title by Sparks on the earlier date, his refusal to deliver at best being unauthorized; and the circumstances fully justified proceedings by Minter other than here taken whereby possession could have been immediately secured. Be this as it may, appellants' case as made and under the jury verdict, lacks an essential element (emphasized in above definition) necessary to a civil action for conversion of property. Consistent with these conclusions, points one and six (court's error in dismissal of co-defendant McReynolds and refusal to submit issue on exemplary damages) are likewise overruled.

■ For another reason the inclusion of McReynolds as party-defendant by amended petition, claiming a conversion as against him in receiving the equipment from Sparks in June 1948, was properly subject to a plea in bar. Minter had already elected to

hold Sparks liable as in conversion by petition filed three years previously; and, as well expressed by counsel, "Having made such an election appellants waived their rights to such property, and having confirmed the title in Sparks and treated same as a sale to him they were estopped to complain and could not complain of a subsequent transfer of the property itself to this appellee alleged to have been almost two years after the date of such election; nor could they hold him severally liable to them or jointly liable with Sparks, for such an election constituted a bar to the cause of action as alleged against this appellee." We have been cited to no Texas cases bearing on this phase of plaintiffs' appeal, but the facts in Nield v. Burton, 49 Mich. 53, 12 N.W. 906, 907, are closely analogous. The court there held: "We have no doubt that after thus electing to treat the property as belonging to Cameron and suing him for its price plaintiff is estopped himself from asserting title against his (Cameron's) vendees. They had a right to buy what plaintiff thus solemnly disclaimed as his own and asserted to be Cameron's property. He cannot dispute the change of title that he has encouraged them to act upon." See also Terry v. Munger, 121 N.Y. 161, 24 N. E. 272, 8 L.R.A. 216, where the court went on to say: "The plaintiffs having treated the title to the property as having passed to the defendants in that suit by such sale, can the plaintiffs now maintain an action against another person, who was not a party to that action, to recover damages from him for his alleged conversion of the same property, which conversion is founded upon his participation in the same acts which plaintiffs in the old suit have already treated as constituting a sale of the property? We think not. * * * the fact that the plaintiffs sold the property by virtue of the transaction which they now seek to treat as a conversion of it by this defendant must and ought to operate as a perfect bar to the maintenance of this action."

All points of appeal upon thorough consideration are overruled and judgment of the trial court affirmed.

### On Rehearing.

We were in error in our conclusions above reached to this extent: The jury findings prima facie *do* establish a wrongful detention of property, i. e., a conversion; and in consequence, plaintiffs seek to apply the general rule of damages incident thereto—its cash market value at time of the detention or conversion. The trial court on the other hand has found that plaintiffs should be fully compensated by a return of their property; in such connection the implication being that the conversion in question was merely a technical one. These findings have support in the record, as we conclude from a careful re-examination.

No absolutely rigid rule may be laid down applicable to every state of facts in conversion cases. Compensation for the injury is the result to be obtained; Field v. Munster, 11 Tex.Civ.App. 341, 32 S.W. 417, affirmed 89 Tex. 102, 33 S.W. 852; and while the wrongdoer is not allowed to profit from his own wrong, the same rule should apply to the party allegedly aggrieved.

Defendant Sparks was not the person with whom this property was initially stored; he testifying that the garage had been locked up after the premises were vacated, to protect some stuff of his own; further, that he did not know who owned the airplane parts at the time, and when told of Minter's ownership, still did not know that the storage was on a rental basis. There was no diminution in the value of the property during the fifteen-day interval; the detention relative thereto amounting to no more than a technical conversion for which nominal damages may be recovered, plus such other special items constituting legal injury that plaintiffs may establish as having been suffered during the stated period of detention.

Appellants' motion for rehearing is sustained as to appellee Sparks and the cause is reversed and remanded for trial on the suggested issues. In so far as the appellee McReynolds is concerned, appellants' motion for rehearing is overruled.